**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KENNEDY H.,

                           Plaintiff,

         v.

COMM'R OF SOC. SEC.,

                        Defendant.

_____

No. 5:17-CV-0247
(CFH)

**APPEARANCES:**

Kennedy H.
Plaintiff pro se

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**OF COUNSEL:**

CATHARINE L. ZURBRUGG, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

       Currently before the Court, in this Social Security action filed by Kennedy H. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings

and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 18 and 22.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and

Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1961, making him 50 years old at the alleged onset date and 54 years old at the date of the ALJ's decision.  Plaintiff reported completing two years of college.  Plaintiff has past work as a systems analyst.  At the initial level, Plaintiff alleged disability due to a left knee injury, a neck injury, a pinched ulnar nerve in the right elbow, and bilateral shoulder impairments.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on January 30, 2014, and for Supplemental Security Income on January 31, 2014, alleging disability beginning February 18, 2011.  Plaintiff's applications were initially denied on April 24, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at an administrative hearing before ALJ Rosanne M. Dummer on March 25, 2015.  On October 23, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-36.)[1] On January 19, 2017, the Appeals Council

---

[1]      The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-30.) First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2012. (T. 13.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 18, 2011, the alleged onset date. (Id.) Third, the ALJ found that Plaintiff has severe impairments including "combined disc and osteoarthritic disease of the cervical spine status-post technically successful May 2011 cervical fusion; status-post January 2012 right carpal tunnel and ulnar tunnel syndrome release; right shoulder adhesive capsulitis; and status-post history of left knee arthroscopy including July 2014 with residuals." (T. 13-14.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 14.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium to heavy work with the following limitations:

> *From February 2011 to June 2012*, the claimant could lift 50 - 100 pounds occasionally and 50 pounds frequently; carry 50 - 100 pounds occasionally and 20 pounds frequently; sit eight of eight hours, up to two hours at a time; stand/walk six of eight hours, up to two hours at a time standing and up to one hour at a time walking. With the right dominant upper extremity, he could frequently (not continuously / repetitively) reach, handle[,] finger/feel, and push/pull. He could occasionally climb ladders or

3

scaffolds; he could frequently climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; he could occasionally work at unprotected heights. The claimant could frequently work with moving mechanical parts (Exhibit 28F). *From January 2014 to the present*, the claimant could lift 50 - 100 pounds occasionally and 50 pounds frequently; carry 50 - 100 pounds occasionally and 20 pounds frequently; sit eight of eight hours, up to two hours at a time; stand/walk six of eight hours, up to two hours at a time standing and up to one hour at a time walking. He could occasionally climb ladders or scaffolds; he could frequently climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; he could occasionally work at unprotected heights. The claimant could frequently work with moving mechanical parts (Exhibit 28F).

(T. 14-27.)[2] Sixth, and last, the ALJ found that Plaintiff is capable of performing past relevant work as a systems analyst as well as other jobs existing in the national economy. (T. 27-29.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant periods from the alleged onset date through the date of the decision.

### D. The Parties' Briefings on Their Cross-Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff, appearing pro se in this action, filed a memorandum of law. (Dkt. No. 18, at 2-7 [Pl.'s Mem. of Law].) Generally, Plaintiff makes seven arguments in support of his motion for judgment on the pleadings. (Id.) First, Plaintiff appears to argue that the ALJ failed to properly consider his impairments including his left knee impairment, hearing impairment, obesity, hypertension, and migraines. (Id. at 3-4.)

_____

[2]    The Court notes that the ALJ subsequently indicated that these two periods correspond to the time prior to Plaintiff's date last insured of June 30, 2012, (for Plaintiff's Title II claim) and the time after the January 31, 2014, application filing date (for Plaintiff's Title XVI claim). (T. 26-27.)

Second, Plaintiff argues that the ALJ failed to evaluate the existence of a combination of impairments that medically equal a Listing. (Dkt. No. 18, at 3-4 [Pl.'s Mem. of Law].)

Third, Plaintiff argues that the ALJ erred in failing to afford controlling weight to the opinions of his treating physicians and that the ALJ's RFC determination is consequently not supported by substantial evidence. (Dkt. No. 18, at 3, 6 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that his treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the record.[3] (Id. at 3, 6.) Plaintiff also points to an October 10, 2014, functional capacity examination by Kristin McCully, OTR-L, (who is not a treating source), indicating less than sedentary work. (Id. at 4.) Plaintiff argues that, instead of weighing these treating source opinions fairly, the ALJ's analysis is prejudicial and biased in that the ALJ selectively chose medical reports and opinions that best suited a denial. (Id. at 4-5.)

Plaintiff additionally argues that the ALJ cited dates and physicians inaccurately, withheld critical evidence submitted by Plaintiff, and engaged in a line of questioning that was prejudicial in order to discredit Plaintiff. (Dkt. No. 18, at 5-6 [Pl.'s Mem. of Law].) Similarly, Plaintiff argues that he was not afforded a fair hearing because the ALJ engaged in biased, malicious, and prejudicial conduct (including making numerous false statements) that constitutes an abuse of discretion necessitating remand. (Id. at 4-7.)

---

[3]      Plaintiff does not identify a specific treating opinion, making it unclear whether he is referring to the opinion of primary care physician Colleen Parent, M.D., or the assessments of providers Rudolph Buckley, M.D., and Michael G. Zahn, M.D. (Dkt. No. 18, at 3, 6 [Pl.'s Mem. of Law].)

Fourth, Plaintiff argues that the ALJ failed to develop an accurate record and should have recontacted Plaintiff's physicians if she needed to know the basis of those physicians' opinions in order to evaluate them. (Dkt. No. 18, at 5-6 [Pl.'s Mem. of Law].)

Fifth, Plaintiff argues that the government refused to release an "IME" report to him despite numerous requests, and that he was unable to review the entire record or controvert any statements made as a result of that denial of release. (Dkt. No. 18, at 3 [Pl.'s Mem. of Law].) It appears that Plaintiff is referring to the responses to medical interrogatories by independent medical expert Jack Lebeau, M.D. (Id. at 3, 1299-1316.)

Sixth, Plaintiff argues that the ALJ's Step Four finding is erroneous. (Dkt. No. 18, at 4-6 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the Step Four finding fails to properly consider that Plaintiff is not able to acquire security clearance in order to perform his past relevant work as a systems analyst, and that the ALJ improperly addressed Plaintiff's past incarceration at the hearing. (Id. at 4.) Plaintiff also argues that the testimony from the vocational expert ("VE") indicates that the VE lacked knowledge on technology-related jobs. (Id. at 4-5.) Plaintiff argues that the ALJ was biased in accepting the testimony of the VE (a witness paid by the government) over the assessments of his treatment providers. (Id. at 6.) Plaintiff also argues that the ALJ and VE failed to consider his age. (Id.)

Seventh, Plaintiff argues that the ALJ denied his right to question a witness by denying his representative's request for a continuance and, instead, ordering interrogatories. Dkt. No. 18, at 5, 7 [Pl.'s Mem. of Law].) In referring to a "witness," it is unclear whether Plaintiff means the VE who testified at his hearing, an alternative VE Plaintiff feels would be more familiar with his past relevant work as a systems analyst, or medical expert Dr. Lebeau (to whom the ALJ

6

sent interrogatories).  (Id.)  Plaintiff argues that the denial of the right to cross-examine the government witness denied him a fair hearing.  (Id. at 7.)  Plaintiff also argues that the ALJ's ruling that a questionnaire would suffice with another government witness (presumably meaning the interrogatories to Dr. Lebeau) violated his due process and equal protection rights to cross-examine a witness.  (Id.)

## 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 22, at 7-23 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ properly assessed Plaintiff's severe and non-severe impairments.   (Id. at 7-10.) Specifically, Defendant argues that the ALJ considered all of Plaintiff's functional limitations in assessing his functional capacity, including his knee impairments, and any error in finding Plaintiff's chondromalacia was not a medically determinable impairment was harmless because the ALJ nonetheless considered all of Plaintiff's knee impairments and limitations when assessing the RFC.  (Id. at 7.)  Defendant also argues that the ALJ acknowledged Plaintiff's migraines and properly did not find them to be severe, noting that Plaintiff did not receive specific treatment for migraines, he took over the counter medication for headaches, and the record did not indicate migraines would cause more than slight work-related limitations.  (Id. at 7-8.)  Defendant also argues that the ALJ properly found Plaintiff's hypertension was not a severe impairment and acknowledged Plaintiff was treated for hypertension with medications.  (Id. at 8.)

Defendant also argues that the ALJ properly evaluated Plaintiff's hearing impairment and found that it was not a severe impairment, citing to Plaintiff's lack of hearing issues during the consultative examination with Tanya Perkins-Mwantuali, M.D., and to an evaluation by audiologist Marjorie Cohen showing Plaintiff could not hear out of his right ear but had excellent speech recognition ability. (Dkt. No. 22, at 8-9 [Def.'s Mem. of Law].) Defendant argues that, although the ALJ noted Plaintiff reported wearing a hearing aid to Dr. Perkins-Mwantuali, the ALJ was plainly aware that he did not use a hearing aid. (Id. at 9.) Defendant also notes that, while Plaintiff states the issue of "contralateral routing of signals" ("CROS") hearing aids was moot (because his physicians concurred such hearing would not resolve his impairment), the record shows that Ms. Cohen noted Plaintiff was aware of CROS hearing aids, but was not interested in them. (Id.) Defendant argues that the ALJ noted Plaintiff did not have any obvious difficulty participating or communicating at the hearing due to hearing problems and that the hearing transcript does not suggest that Plaintiff had any issues communicating with the ALJ. (Id.) Defendant also notes that Plaintiff has been deaf in his right ear since he was seven or eight years old and held gainful employment as an adult with no apparent limitations based on his deafness. (Id.)

Regarding Plaintiff's contention related to a "suspected" versus "confirmed" superior labral anterior to posterior ("SLAP") tear in his shoulder, Defendant argues that the ALJ noted an MRI showing "questionable but not definitive" evidence of a SLAP tear. (Dkt. No. 22, at 9-10 [Def.'s Mem. of Law]; T. 10.) Defendant also argues that Plaintiff refers to only evidence from September 2016 (which was not in the record and was after the relevant period) to argue that the SLAP tear was confirmed. (Id. at 10.) Defendant argues that, regardless, both the

ALJ and Dr. Lebeau considered all the evidence of limitations related to Plaintiff's alleged shoulder impairment, and, therefore, a confirmed SLAP tear rather than a suspected tear would not change Dr. Lebeau's opinion as to Plaintiff's functioning or the ALJ's RFC assessments. (Id.)

Regarding Plaintiff's contention related to the ALJ's consideration of his obesity, Defendant argues that it was proper for the ALJ to consider Plaintiff's obesity because Social Security Ruling ("SSR") 02-1p provides that the agency will consider a claimant's obesity in assessing the claimant's impairments. (Dkt. No. 22, at 10 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ properly considered whether Plaintiff met any of the listings. (Dkt. No. 22, at 10-11 [Def.'s Mem. of Law].) Specifically, Defendant argues that the ALJ considered whether Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, but determined, based on Dr. Lebeau's opinion, that Plaintiff's impairments did not meet or equal the severity of a listed impairment. (Id. at 10.)

Third, Defendant argues that the ALJ properly determined Plaintiff's RFC and weighed the treating physician opinions. (Dkt. No. 22, at 11-18 [Def.'s Mem. of Law].) Specifically, Defendant argues that the ALJ discussed in detail the substantial record evidence that supported the RFC determinations and that Dr. Lebeau's opinion provided further substantial evidence in support of the RFC assessments. (Id. at 11-16.) Defendant argues that the ALJ adhered to the regulatory factors in considering Dr. Lebeau's opinion and correctly afforded great weight to that opinion because it was consistent with the evidence of record and

9

because Dr. Lebeau was board-certified in internal medicine and cardiology and was a medical expert recognized by the Commissioner. (Id. at 14-15.)

Regarding Plaintiff's contention that the ALJ erred in not giving controlling weight to the opinions from his treating physicians, Defendant argues that the ALJ considered all relevant regulatory factors and correctly determined that the opinions from Plaintiff's treating sources were entitled to little weight, noting in particular that the opinion from Dr. Parent was not consistent with the medical evidence of record, that Dr. Parent specialized in primary care, and that Plaintiff saw Dr. Parent only every six months. (Dkt. No. 22, at 16-17 [Def.'s Mem. of Law].)

Defendant also argues that Ms. McCully's opinion was not entitled to the same special deference given to a treating physician's opinion and was not entitled to controlling weight because she is not an acceptable medical source and did not have an ongoing treating relationship with Plaintiff. (Dkt. No. 22, at 17 [Def.'s Mem. of Law].) Defendant additionally cites to the ALJ's explanation that, although Ms. McCully noted Plaintiff's stiff and awkward movements and slow, cautious movements with pain exacerbation, these restricted movements were not observed elsewhere in the record. (Id. at 17-18.) Defendant argues that contemporaneous physical examinations and treatment notes from Plaintiff's physicians undermine the limitations in Ms. McCully's opinion. (Id. at 18.) Defendant also argues that the ALJ had no duty to recontact Plaintiff's treating sources where, as here, the record provided sufficient evidence for the ALJ to resolve inconsistencies in the opinion and make a determination as to Plaintiff's functional capacity. (Id.)

Fourth, Defendant argues that substantial evidence supports the ALJ's analysis at Steps Four and Five of the sequential evaluation. (Dkt. No. 22, at 18-23 [Def.'s Mem. of Law].) Specifically, Defendant argues that Plaintiff's inability to obtain security clearance due to his history of incarceration does not impact the ALJ's analysis of whether he can physically and mentally perform the functions of his past work, which are the only relevant questions in the Commissioner's inquiry. (Id. at 19.)

Regarding Plaintiff's contention that the VE was not an expert with specific knowledge of technology-related jobs, Defendant argues that Plaintiff has waived any argument that the VE was not qualified because neither Plaintiff nor his representative objected to the VE's qualifications at the hearing or to the Appeals Council, despite the fact that his representative had the opportunity and solicited testimony from the VE regarding whether an individual with additional limitations other than those posed by the ALJ could still perform the jobs the VE identified. (Dkt. No. 22, at 19-20 [Def.'s Mem. of Law].)

Regarding Plaintiff's contention that the ALJ and VE failed to take into account his age as a vocational factor, Defendant argues that the regulations provide that the agency will not consider vocational factors such as age in determining whether a claimant can perform his past relevant work and that, regardless, the ALJ and the VE did consider Plaintiff's age, both in assessing whether he could perform his past relevant work and in determining whether other jobs existed in significant numbers in the national economy that Plaintiff could perform. (Dkt. No. 22, at 20 [Def.'s Mem. of Law].)

Regarding Plaintiff's contention that the ALJ erred in denying a request for a continuance to properly cross-examine witnesses (possibly referring to the ALJ's proffer of medical and vocational interrogatory responses from the VE and medical expert Dr. Lebeau), Defendant argues that (a) the ALJ informed Plaintiff he could submit written comments regarding this new evidence or written questions to be submitted to the VE or medical expert, (b) the ALJ told him that he could request a supplemental hearing and that she would grant such a request unless she received additional records supporting a fully favorable decision, and (c) the ALJ stated that Plaintiff could request an opportunity to question witnesses in person, including the VE and medical expert, but that she would grant a request to question witnesses only if she determined that questioning the witness was needed to inquire fully into the issues. (Dkt. No. 22, at 20-21 [Def.'s Mem. of Law].)

Of note, Defendant argues that the record contains no evidence indicating that either Plaintiff or his representative responded to a September 22, 2015, letter from the ALJ as to what questions Plaintiff specifically wanted to pose to the VE and that Plaintiff's argument that the ALJ denied him the opportunity to cross-examine witnesses is baseless because the ALJ gave Plaintiff the opportunity for an additional hearing and opportunity to submit written questions. (Dkt. No. 22, at 20-21 [Def.'s Mem. of Law]; T. 302, 307, 312.) Defendant argues that it was reasonable for the ALJ to ask Plaintiff to identify what additional questions he had for the VE in order to determine whether they were the same questions Plaintiff's representative had already asked at the hearing because the ALJ was not required to subpoena either expert to provide additional testimony unless it would have contributed to meaningful development of the record. (Id. at 22-23.) Defendant also argues that the ALJ

made it clear in her September 22, 2015, letter that she would conduct an additional hearing if warranted, but neither Plaintiff nor his representative responded.  (Id. at 23.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citation omitted). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers

14

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Step Two Determination

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  See Taylor v. Astrue, 32

F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity. Id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Plaintiff appears to argue that the ALJ erred in considering his knee impairment, hearing impairment, migraines, hypertension, and obesity. (Dkt. No. 18, at 3-4 [Pl.'s Mem. of Law].)  The Court finds these arguments unpersuasive.

When considering Plaintiff's impairments, the ALJ noted that Dr. Lebeau opined Plaintiff has a possible right shoulder impingement and suspected SLAP tear (noting there was a questionable but not definite SLAP tear in an MRI dated March 26, 2012) and that Dr. Lebeau noted Plaintiff was suspected of having chondromalacia of the tibiofemoral cartilage. (T. 13, 323, 815-20, 1299-1316.)   The ALJ noted that, while these were not medically determinable impairments in the absence of actual diagnoses, she nonetheless considered all of Plaintiff's limitations in the RFC.  (Id. at 13.)  The ALJ noted that Plaintiff was observed throughout the record to have migraines, though no specific treatment was indicated and he appeared to use only over-the-counter medications.  (Id. at 13, 674-810.)  The ALJ also noted that Plaintiff was treated for hypertension with medications, though in May 2014, he was not taking any blood pressure medication, his levels were within normal limits, and no more than medication management was indicated for uncomplicated hypertension.  (Id. at 13, 1096, 1299-1316.)  The ALJ additionally noted that Plaintiff has obesity and was recommended to exercise, and that "[t]o the extent the claimant could lose weight, [it] would appear to enhance his overall functioning and musculoskeletal complaints."  (Id. at 13, 23-24, 1059.)  The ALJ stated that she took into account that obesity can cause limitations in exertional functions such as sitting, standing, walking, lifting, carrying, and pushing/pulling, "though no significant limitation is indicated here." (Id. at 23-24.)  The ALJ concluded that the overall record did not

indicate migraines, hypertension, or obesity would cause more than a slight work-related limitation and, therefore, these conditions were non-severe. (Id. at 13.)

The ALJ's analysis represents a detailed consideration of Plaintiff's various alleged impairments and the evidence of record. (T. 13-14.) The decision indicates that the ALJ properly considered Plaintiff's alleged knee impairment because the ALJ did find that Plaintiff had a severe knee impairment, specifically "status-post history of left knee arthroscopy including July 2014, with residuals." (Id. at 13.) It is unclear whether Plaintiff argues that his migraines and hypertension should have been found to be severe impairments, but the record does not support such a finding because these conditions were typically noted as secondary diagnoses treated conservatively with medication and were not alleged by Plaintiff at the initial level as disabling impairments. (Dkt. No. 18, at 3-4 [Pl.'s Mem. of Law]; T. 13, 84, 93, 426, 799, 1139.) Further, it was not improper for the ALJ to consider Plaintiff's obesity in determining his severe and non-severe impairments or his RFC because SSR 02-1p requires adjudicators to consider obesity's effects when evaluating disability. SSR 02-1p, 2002 WL 34686281, at *1.

The ALJ also found Plaintiff's hearing loss was a non-severe impairment, concluding that Plaintiff's deafness in the right ear would not cause more than a slight work-related limitation and noting that Plaintiff had no difficulties with hearing at the consultative examination with Dr. Perkins-Mwantuali. (T. 13, 816.) The ALJ also noted that Plaintiff reported that he wore a hearing aid and went deaf in the right ear at the age of eight because of German measles. (Id. at 13, 218-43, 816.) The ALJ noted the results of Ms. Cohen's audiological assessment, including her opinion that Plaintiff would have problems when

addressed on the right side and her observation that, although Plaintiff was aware of CROS hearing aids, he was uninterested in this option. (Id. at 13-14, 1034-36.) The ALJ additionally noted a follow-up appointment in December 2014 indicating an ear, nose, and throat examination was within normal limits with an assessment of unspecified tinnitus and bilateral sensorineural hearing loss. (Id. at 14, 1038.) Finally, the ALJ noted that Plaintiff appeared to participate and respond to questions with no obvious hearing difficulties at the administrative hearing, and that Plaintiff has not followed up with a specified hearing aid, as noted by his doctor, which is inconsistent with an assertion that his hearing problems cause such serious limitations. (Id. at 14.)

Finally, in the alternative, the Court finds that any error by the ALJ in failing to find the above impairments severe would be harmless because she found other impairments severe, continued with the sequential evaluation, and provided adequate explanation in her decision showing she properly considered the evidence related to Plaintiff's various impairments. Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798. For the reasons above, the ALJ's findings regarding Plaintiff's impairments at Step Two are supported by substantial evidence and remand is therefore not required on this basis.

## B. The Listings

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing,

Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." Rockwood, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." Rockwood, 614 F. Supp. 2d at 272 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. Rockwood, 614 F. Supp. 2d at 273 (citing Berry, 675 F.2d at 468).

Plaintiff argues that the ALJ's analysis failed to evaluate the existence of a combination of impairments that are medically equivalent to a listed impairment. (Dkt. No. 18, at 4 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.

When considering whether Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of a listed impairment, the ALJ stated that medical expert Dr. Lebeau reviewed the evidence of record and concluded that Plaintiff's impairments do not meet or equal a listed impairment. (T. 14.)  While the ALJ's analysis on this issue is notably brief, consisting of a single sentence under her numbered finding, it is still clear that she relied on the opinion of Dr. Lebeau in finding that Plaintiff's impairments do not meet or medically equal a listing, singly or in combination. (Id.)  The remainder of her decision also indicates a detailed analysis of the evidence of record that supports the overall finding on this issue. (Id. at 15-29.)

Further, Plaintiff's argument fails to persuasively articulate that the medical evidence substantiates that his impairments in combination meet or medically equal the severity of a

listed impairment. In considering this argument, the Court declines any invitation to reweigh the evidence before the ALJ. <u>See</u> <u>Lewis v. Colvin</u>, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting <u>Cage v. Comm'r of Soc. Sec.</u>, 692 F.3d 118, 122 (2d Cir. 2012); citing <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)); <u>Vincent v. Shalala</u>, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983)). Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. Remand is therefore not required on this basis.

### C. The ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 11-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the case record.'" <u>Greek v. Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015) (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, <u>inter alia</u>: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" <u>Greek</u>, 802 F.3d at 375 (quoting <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." <u>Blinkovitch v. Comm'r of Soc. Sec.</u>, No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), <u>Report and Recommendation adopted by</u> 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" <u>Greek</u>, 802 F.3d at 375 (quoting <u>Burgess</u>, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" <u>Pardee v. Astrue</u>, 631 F.

Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ summarized the various opinions of record within her RFC analysis. (T. 24-27.) The ALJ afforded some weight to a February 2011 assessment from treating provider Dr. Zahn (related to Plaintiff's Worker's Compensation case) that opined between 15 percent temporary disability for the right knee and 17.5 percent loss of use of the left knee, but found that the totality of the evidence supported the ability to perform work consistent with the RFC. (Id. at 24, 402-04, 419-20, 681-83.)  The ALJ also afforded some weight to assessments by Dr. Zahn from February, March, and April 2014 that opined 20 percent temporary impairment related to the left knee, noting that these opinions were a durational (rather than permanent) assessment of Plaintiff's functioning. (Id. at 24, 799, 802, 1130-31.)  The ALJ gave no weight to an initial physical therapy evaluation in March 2014 that opined a 76 percent disability rating because it was a statement made prior to commencement of physical therapy based solely on Plaintiff's self-reported limitations and was inconsistent with the overall record evidence. (Id. at 24, 804-06.)

The ALJ considered several assessments and opinions from surgeon Dr. Buckley between 2011 and 2012. (T. 24-25, 471, 478, 730, 772.)  The ALJ afforded some weight to these opinions for the time in which they were issued, noting that the latter opinion from January 2012 (indicating Plaintiff could not return to work following a right ulnar and carpal tunnel release) was durational for the period immediately after that surgery and that the overall record did not indicate disabling limitations.  (Id. at 25.)

The ALJ also considered the consultative opinions of record.  (T. 25-27.)  The ALJ noted that consultative examiner Dr. Perkins-Mwantuali opined that Plaintiff had moderate limitations in kneeling, crawling, squatting and climbing, mild-to-moderate limitations in

24

walking and standing, and mild limitations in any activity requiring full range of motion and repeated movements of the neck.  (Id. at 25, 819.)  The ALJ afforded limited weight to Dr. Perkins-Mwantuali's April 2014 opinion (which noted Plaintiff's gait was abnormal with a left-sided limp) because Plaintiff underwent a left knee arthroscopy in July 2014 and other records suggested Plaintiff's complaints were not credible including a March 2014 evaluation by Dr. Zahn indicating Plaintiff presented with highly normalized objective presentation and normal gait.  (Id. at 25, 805, 821-25.)  The ALJ noted that, although consultative psychological examiner Rebecca Fisher, Psy.D., opined that Plaintiff has a moderate limitation in making appropriate decisions secondary to poor judgment, that limitation was not based on any psychiatric impairment and Dr. Fisher did not believe it was significant enough to interfere with daily functioning.  (Id. at 25, 813.)  The ALJ afforded great weight to Dr. Fisher's opinion because it was consistent with the overall record evidence indicating some history of criminal conduct but not a psychiatric diagnosis.  (Id. at 25.)

The ALJ afforded little weight to primary care physician Dr. Parent's October 2014 opinion indicating that Plaintiff could perform less than sedentary exertion due to neck pain radiating into the shoulder.  (T. 25-26, 1018-19.)  The ALJ noted that x-rays between June 2011 and April 2014 showed a stable C3-C5 fusion with no movement, fracture, or failure of the hardware and that, although Dr. Parent indicated diagnoses of right-sided neck pain that radiated to the right shoulder, she also noted that a September 2014 MRI only appeared minimally worse than the previous examination.  (Id. at 25-26, 454, 488, 490, 742, 1139.)  The ALJ also noted that Plaintiff saw Dr. Parent for primary care follow-up of hypertension and,

although Dr. Parent is a treating source, opinions as to disability that are not well-supported are not entitled to controlling weight. (Id. at 26, 565-606.)

The ALJ afforded no weight to Ms. McCully's functional capacity evaluation indicating Plaintiff could lift only seven pounds safely, noting that it appeared to be based solely on Plaintiff's self-reports of pain and that, although Plaintiff demonstrated stiff and awkward movements throughout Ms. McCully's testing, such limited movements were not observed elsewhere in the record. (T. 26, 1020-33.) The ALJ also noted that medical expert Dr. Lebeau did not find Ms. McCully's report supported by the objective record. (Id. at 26, 1304.)

Finally, the ALJ afforded great weight to Dr. Lebeau's opinion indicating that he would not expect significant limitations given the findings on physical examinations and x-rays, noting that Dr. Lebeau performed a longitudinal review of the overall objective record evidence and his opinion was consistent with the overall record evidence. (T. 26-27, 1299-1316.) The ALJ indicated that Dr. Lebeau assessed the limitations adopted in the RFC for both time periods. (Id. at 26-27.) The ALJ noted that, to the extent that Dr. Lebeau opined Plaintiff's ability to stand and walk was four of eight hours *each* and five of eight hours *each* for the respective periods, the ALJ included a *total* of six of eight hours for standing/walking in the RFC, which was favorable to Plaintiff. (Id. at 14, 27, 1312.) In assessing Dr. Lebeau's opinion, the ALJ pointed out that Dr. Lebeau's notes indicated surgery had successfully treated Plaintiff's conditions, with a post-surgery MRI showing excellent technical results and an EMG showing relief of the cervical impingement and peripheral nerve impingement (involving the ulnar and medial nerves) followed by "endless atypical pain." (Id. at 26, 1301.) The ALJ also noted that

Dr. Lebeau is a medical expert recognized by the Commissioner of Social Security who is board-certified in cardiology and internal medicine.  (Id. at 27.)

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the opinions of the treating physicians and that the ALJ's RFC determination is not supported by evidence in part because Ms. McCully's evaluation indicates a capacity for less than sedentary work. (Dkt. No. 18, at 3-6 [Pl.'s Mem. of Law].)  The Court finds these arguments unpersuasive.

The ALJ's analysis of the opinion evidence (discussed in detail above) and Plaintiff's RFC indicates a thorough review of the record and detailed consideration of Plaintiff's credible limitations.  The ALJ provided analysis and specific reasons for the weight afforded to the various opinions, reasons which are supported by the objective evidence of record.  (T. 24-27.)  The ALJ was entitled to rely on the opinion of non-examining medical expert Dr. Lebeau if it was better supported or more consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); accord Petell v. Comm'r of Soc. Sec., No. 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).  Further, in formulating a claimant's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); Zongos v. Colvin, No. 12-CV-1007,

2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Because the ALJ properly considered the opinions and provided sufficient explanation for her analysis of and the weight afforded to those opinions, the Court finds that the ALJ did not err in failing to afford controlling weight to Plaintiff's treating providers or in relying on the opinion of Dr. Lebeau.

For the reasons above, the Court finds that the ALJ's analysis of the opinion evidence and RFC determination are supported by substantial evidence. Remand is therefore not required on these bases.

### D. Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of

pain.'" Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll, 705 F.2d at 642; Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. Weather v. Astrue, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, noting that Plaintiff's subjective complaints were well beyond the scope of the objective evidence. (T. 22-24, 27.) Plaintiff argues that he was not afforded a fair hearing because the ALJ engaged in biased conduct and that the ALJ improperly addressed Plaintiff's past incarceration at the hearing. (Dkt. No. 18, at 4-7 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive.

### 1. The ALJ's Credibility Analysis

When considering Plaintiff's credibility, the ALJ provided several reasons for finding Plaintiff's subjective complaints less than fully credible. For example, the ALJ noted that Plaintiff testified to an arrest for fraud in February 2011, which did "little to enhance the overall credibility of his statements" and that Plaintiff's testimony was vague about the nature of the criminal charge. (See Dkt. No. 18, at 4-7 [Pl. Mem. of Law]) However, it is clear that the ALJ did not rely solely on Plaintiff's past incarceration in finding his subjective complaints less than fully credible. The ALJ also cited Plaintiff's treatment history including neck and knee

surgeries, noting that post-operative objective evidence was inconsistent with disabling limitations.  (T. 22-23, 329, 399, 455, 488, 490, 742, 821-22, 1101, 1139.)  The ALJ also noted that, despite Plaintiff's ongoing complaints of right hand and shoulder pain, Dr. Buckley had recommended only conservative care since November 2014.  (Id. at 22.)  The ALJ noted that Plaintiff sought acupuncture and declined shoulder and back injections, "to his credit."  (Id.)

The ALJ pointed out that, in March 2014, Plaintiff presented to Dr. Zahn, who noted Plaintiff's inconsistent reports regarding left knee pain on examination.  (T. 23, 805.)  The ALJ noted that Plaintiff gave various accounts for knee pain exacerbations including telling one provider that he exacerbated his pain going up stairs in 2012 while telling another provider that this occurred in February 2014.  (Id. at 23, 804, 821-25.)  Further, the ALJ noted that, at the hearing, Plaintiff reported unremitting pain which was between 8/10 and 10/10 on average with his knee and shoulder pain being 9/10 during the hearing.  (Id. at 23.)  The ALJ indicated that those reports lessen Plaintiff's credibility as someone of that level of pain would be expected to show some signs of discomfort or require emergent treatment.  (Id.)  The ALJ also noted that, despite Plaintiff's testimony of rather limited activities, he was recommended to exercise in March 2015, not restrict activities.  (Id.)

The ALJ also noted that, despite Plaintiff's function reports indicating he has difficulty with almost every activity involving use of the hands, arms, and knees, he prepares his own meals, shops in stores, watches television, listens to the radio, is capable of managing his own finances, goes out every week, goes out alone, and socializes with family and friends.  (T. 24, 281-230.)  The ALJ pointed out that, to Plaintiff's credit, he reported a more active

30

lifestyle during the physical consultative examination.  (Id. at 24, 816.)  The ALJ therefore provided multiple reasons to support the adverse credibility determination.

The Court also notes that Plaintiff simultaneously argues that the ALJ should not have addressed this past incarceration at the hearing and that the ALJ failed to properly consider that he is not able to acquire security clearance in order to perform past relevant work as a systems analyst because of this past incarceration.  (Dkt. No. 18, at 4-7 [Pl.'s Mem. of Law].)  The inherent inconsistency in these opposing positions further weakens Plaintiff's argument.  Further, the ALJ noted Plaintiff's incarceration history "may affect hiring for some jobs," but clarified that "remaining unemployed because of a claimant's inability to get work or hiring practices of employers, are not factors in deciding whether a claimant is disabled." (T. 24; 20 C.F.R. §§ 404.1566(c), 416.966(c).)[4]

The ALJ's credibility analysis represents an adequate consideration of the requisite regulatory factors and the evidence of record in this case.  For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  Remand is not required on this basis.

---

[4]        The ALJ observed that Plaintiff asserted Dr. Buckley noted a broken surgical screw in his neck that was causing complications, but that this was not corroborated by the record evidence. (T. 22.) While the record does contain cervical spine x-rays dated November 3, 2014, showing fracture of C5 screws with minimal displacement and significant interbody bone growth at C3-C5, there were no acute findings otherwise. (Id. at 1264.) Dr. Buckley referred Plaintiff to pain management that same day. (Id. at 1265.) While this appears to be a misstatement on the ALJ's part, the Court finds any error to be harmless because she provided other reasons within her credibility analysis which were supported by substantial evidence. See Schlichting, 11 F. Supp. 3d at 206-07 (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence); see also Taylor v. Colvin, No. 14-CV-0928, 2016 WL 1049000, at *8-9 (N.D.N.Y. Mar. 11, 2016) (noting that the ALJ's failure to inquire into the reasons for gaps in mental health treatment prior to using those gaps against the plaintiff's credibility was harmless where the ALJ provided other reasons supported by substantial evidence to support the overall credibility determination).

## 2. The ALJ's Alleged Bias and Abuse of Discretion

"A claim of entitlement to social security benefits triggers Due Process Clause protections." Pokluda v. Colvin, No. 13-CV-0335, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976)). Generally, due process requires only that the proceedings in the context of an administrative social security hearing be "full and fair." Id. (citing Richardson, 402 U.S. at 401-02; Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).

> Undeniably, a claimant seeking administrative review of an application for Social Security benefits is entitled to a hearing before an unbiased ALJ. See Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities."). The law presumes, however, that a person serving as an ALJ, including for purposes of adjudicating social security claims, is unbiased. Rawlands v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001); cf. McClure, 456 U.S. at 195 (involving hearing officers deciding Part B medicare claims). This presumption may be rebutted where there is evidence of bias or an inability of an ALJ be fair. Rawlands, 261 F.3d at 857-58; Little v. Comm'r of Soc. Sec., 780 F. Supp. 2d 1143, 1150 (D.Ore . 2011); see also McClure, 456 U.S. at 195–96.

Bodine v. Colvin, No. 11-CV-1265, 2013 WL 1108625, at * 7 (N.D.N.Y. Feb. 25, 2013). See also Liteky v. U.S., 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge

. . . A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.") (internal citations omitted).

Several of Plaintiff's arguments relating to the ALJ's consideration of the evidence (including Plaintiff's testimony, his history of incarceration, and the opinions of record), the RFC assessments, and the determinations at Steps Four and Five allege that the ALJ did not afford Plaintiff a fair hearing and rather engaged in biased, malicious, and prejudicial behavior amounting to an abuse of discretion. (Dkt. No. 18, at 4-7 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive for the reasons addressed here and in Section III.E. of this Decision and Order.

First, as discussed in Section III.C. of this Decision and Order, it was within the ALJ's purview to resolve any material conflicts in the evidence and the various opinions of record. Bliss, 2015 WL 457643, at *7; Petell, 2014 WL 1123477, at *10. Because the ALJ properly considered the opinions and provided sufficient explanation for her analysis, the Court finds that the ALJ's analysis did not constitute prejudice, bias, or otherwise improper selective choosing of the medical reports and opinions. Further, the Court's review of the record indicates that the ALJ did not cite dates or physicians inaccurately nor did she make numerous false statements as Plaintiff has argued.

Second, the Court has reviewed the transcript of the administrative hearing and finds that the ALJ did not engage in a prejudicial line of questioning to discredit Plaintiff. (T. 37-83.) The Court notes that, while Plaintiff was questioned about his prior incarceration and the

circumstances surrounding that incarceration, neither Plaintiff nor his representative objected to the line of questioning at the hearing.  (Id. at 45-47.)  Indeed, the Court's review of the hearing transcript indicates that the ALJ initially asked Plaintiff about his past employment and alleged onset date, to which Plaintiff responded that February 18, 2011, was the date that he was injured and subsequently explained that he was injured when assaulted by police.  (Id. at 45-46.)

Third, the transcript of the administrative hearing indicates that Plaintiff was given the opportunity to testify, he was fully questioned by both the ALJ and his representative, and the ALJ elicited testimony from a VE before giving Plaintiff's representative the opportunity to question the VE.  (T. 37-83.)  Plaintiff has therefore not established that the hearing was not a full and fair proceeding related to his claim.

Based on the Court's review of the record and the ALJ's decision, the Court finds that the Plaintiff has failed to establish that the proceedings were anything other than full and fair. The Court also finds that the presumption of the hearing officer's impartiality has not been rebutted. The ALJ's findings and overall decision represent a thorough review of the evidence in this case and her analysis is supported by substantial evidence.  Remand for any such abuse of discretion is therefore not warranted here.

## E. Step Four and Step Five Determinations

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting Shaw v. Chater, 221 F.3d 126,

132 (2d Cir. 2000)) (internal citations omitted).  "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff is capable of performing past relevant work as a systems analyst, as it is actually and generally performed.  (T. 27-29.)  The ALJ found that Plaintiff is also capable of performing other jobs existing in the national economy.  (Id. at 28-

29.) Plaintiff argues that (a) the Step Four finding fails to properly consider the fact that Plaintiff is not able to acquire security clearance in order to perform his past relevant work as a systems analyst and that the ALJ improperly addressed Plaintiff's past incarceration at the hearing, (b) the VE's testimony indicates she lacked knowledge on technology-related jobs, (c) the ALJ was biased in accepting the testimony of the VE (a witness paid by the government) over the assessments of his treatment providers, (d) the ALJ and VE failed to consider his age, and (e) the ALJ denied his right to question a witness by denying his representative's request for a continuance and, instead, ordering interrogatories. (Dkt. No. 18, at 4-7 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive.

First, the ALJ specifically noted Plaintiff's incarceration history, which she indicated "may affect hiring for some jobs," but correctly stated that "remaining unemployed because of a claimant's inability to get work or hiring practices of employers, are not factors in deciding whether a claimant is disabled." (T. 24.) See also 20 C.F.R. §§ 404.1566(c), 416.966(c). The ALJ need only show that jobs are generally available to a claimant. See Gill v. Astrue, No. 10-CV-0985, 2011 WL 4352410, at *14 (N.D.N.Y. Sept. 15, 2011), Report and Recommendation adopted by 2011 WL 4352719 (Sept. 15, 2011) ("A plaintiff will be found not disabled if the ALJ determines the plaintiff can perform work in the national economy regardless of whether work exists in the immediate area in which plaintiff lives, a specific job vacancy exists for plaintiff, or *plaintiff would be hired if she applied*.") (emphasis added) (citing 20 C.F.R. §§ 404.1566(a)(1)-(3)). Contrary to Plaintiff's argument that the ALJ and VE failed to consider his age as a vocational factor, the ALJ also indicated she had carefully considered the overall record evidence and Plaintiff's age of 54. (T. 22.)

Second, neither Plaintiff nor his representative objected at the hearing to the VE's qualifications to serve as a VE.  (T. 75-82.)  Further, as Defendant argues, the ALJ properly proffered additional VE and medical expert evidence to Plaintiff via his representative and informed him that (a) he could submit written comments regarding the responses to interrogatories or written questions to be submitted to the VE or medical expert, (b) he could request a supplemental hearing and that she would grant such a request unless she received additional records supporting a fully favorable decision, and (c) he could request an opportunity to question witnesses, including the VE and medical expert, but that the ALJ would grant a request to question witnesses only if she determined that the questioning was needed to inquire fully into the issues. (Dkt. No. 22, at 7-23 [Def.'s Mem. of Law]; T. 285-303, 306-07, 310, 312.)  In so doing, the ALJ did provide Plaintiff with options (submission of written comments/questions, requesting a supplemental hearing, and/or requesting an opportunity to question witnesses) regarding the testimony of the VE and medical expert and fulfilled her obligation to provide Plaintiff a full and fair proceeding.

Third, the Court's review indicates that the ALJ was not biased in relying on the testimony of the VE.  While Plaintiff argues that the ALJ accepted the VE testimony over the assessments of his treatment providers, the Court notes that the ALJ properly analyzed and weighed the medical opinion evidence of record to frame a hypothetical question which she then posed to the VE.  As discussed in Section III.C. of this Decision and Order, the ALJ properly considered the opinion evidence of record and determined Plaintiff's RFC.

Further, as discussed in Section III.D.2. of this Decision and Order, the Court finds that the Plaintiff has failed to establish that the proceedings were anything other than full and fair. In particular, Plaintiff has pointed to no evidence even suggesting that the VE's testimony was influenced by the fact she received compensation from the government for her testimony. The Court also finds that the presumption of the hearing officer's impartiality has not been rebutted.

For the reasons included in Defendant's memorandum of law and those discussed above, the ALJ's analysis at Steps Four and Five reflects an adequate consideration of the VE testimony and proper reliance on that testimony. Consequently, the Step Four and Five determinations are supported by substantial evidence. Remand is therefore not required on this basis.

### F. Whether the ALJ Properly Developed the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. Burgess, 537 F.3d at 128 (quoting Melville, 198 F.3d at 52; citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw, 221 F.3d at 134). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay, 562 F.3d at 508-09). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." Hart v. Comm'r of Soc.

Sec., No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted).

Plaintiff argues that the ALJ failed to develop an accurate record and that she should have recontacted Plaintiff's physicians if she needed to know the basis of the physicians' opinions in order to evaluate them. (Dkt. No. 18, at 5-6 [Pl.'s Mem. of Law].) Plaintiff also argues that the government refused to release an "IME" report to him despite numerous requests, and that he was unable to review the entire record or controvert any statements made based on that denial. (Id. at 3.) Plaintiff also appears to argue that he was not given the chance to properly question a "government witness" who was not readily available to testify and that the ALJ erred in denying his representative's request for a continuance, opting instead to rely on interrogatories. (Id. at 5, 7.) The Court finds these arguments unpersuasive.

As discussed in Section III.C. of this Decision and Order, the ALJ properly considered the opinion evidence of record and determined Plaintiff's RFC. The ALJ was not obligated to recontact Plaintiff's treating physicians because the evidence of record was "adequate to permit the ALJ to make a disability determination." Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996)); see also 20 C.F.R. §§ 404.1520b, 416.920b (indicating that the Commissioner may re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled"). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,'

the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing <u>Perez</u>, 77 F.3d at 48). Plaintiff has identified no evidence that prevented the ALJ from making a reasonable determination as to Plaintiff's disability. Additionally, as discussed in Section III.E. of this Decision and Order the ALJ properly proffered additional VE and medical expert testimony to Plaintiff via his representative and informed him of his options regarding further questioning of these sources. (Dkt. No. 22, at 7-23 [Def.'s Mem. of Law]; T. 285-303, 306-07, 310, 312.) Therefore, the Court finds that the ALJ fulfilled her duty to develop the record. Remand is not required on this basis.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:     August 29, 2018
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge